# Shornhorst *v.* Jacob, Appellant.

*Will—Construction—Estate in fee simple—Power to convey in fee—Devise to son.*

1. Where a testator devises real estate to his son, and if the son dies unmarried, then over, but if the son is married then to his children, followed by a provision for the son's widow if the son has no children, at his death, and a final direction that on the widow's remarriage "then the remaining property he [the son] has not sold shall go back to" testator's remaining children, the son takes an estate in fee simple, or at least the power to sell it in fee.

2. In such case the provision "if my son" dies married or not married is to be deemed to refer to death in the lifetime of testator.

Argued October 14, 1921.  Appeal, No. 139, Oct. T., 1921, by defendant, from judgment of C. P. Allegheny Co., July T., 1921, No. 2498, for plaintiff on case-stated, in suit of William Albert Shornhorst v. Hubert B. Jacob. Before FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ.  Affirmed.

Case-stated to determine marketability of real estate.

SHAFER, P. J., filed the following opinion:

The action is assumpsit for the purchase money of land and the parties have filed a case-stated in the nature of a special verdict which makes the determination of the case dependent on the question of whether or not the plaintiff took by his father's will such title to the land which he agreed to sell that his general warranty deed to the defendant would vest in the latter a good and marketable title in fee simple.

The will in question was evidently drawn by a person very little versed in such matters.  In the first four paragraphs of the will the testator gives to his daughters life estates in certain lands.  In the fifth paragraph he gives to the plaintiff, his son, the land in question in this case, saying that he gives it to him because he had to work

for it and that he had worked for him without any pay during all these years. The sixth paragraph provides for giving his daughters who should become widows after a certain age a fee instead of a life estate in the properties which he gave them in the first part of the will, and then proceeds, "And if my said son dies and is not married, his share of the property that is left to him shall be rented and the taxes and insurance and repairs is made and all is paid for then the balance of the money that is left shall go to my remaining children share and share alike. But if he is married and child or children they shall have his share and share alike after the death of his widow or when she marry again after her marriage it go to his children if any, if no children at his death or thereafter his widow is to receive one-third of the income of the property, the two-thirds is to pay taxes and other expense that may come to be paid and balance of the money that is left shall go to my remaining children share and share alike. If she marries again the income or the one-third paid to her stops thereafter. If he has no children living at the time of her remarriage again then the remaining property he has not sold shall go back to my remaining children or their children share and share alike."

In determining what estate the testator intended to give to his son, it may be observed in the first place that he well knows the distinction between life estate and a fee, and immediately after giving his daughters life estates he gives the land in question to his son, giving as a reason that he had worked for it. It is further to be noted that in winding up his painful attempt to provide for all the contingencies he can think of in regard to his son and his wife, and children, if he has any, he provides that in case the provision he is trying to make for his son's widow shall cease and there is no child of his son living, "then the remaining property he has not sold shall go back to my remaining children." From this it is to be plainly inferred that he believes he was giving his

son the land in such a manner that he could sell it. This is practically equivalent to the word "residue" discussed in the case of Jauretche v. Proctor, 48 Pa. 466.

Having these indications of the testator's intentions in mind, we proceed to the consideration of the principal question in the case, which is whether the provision "if my son dies," married or not married, is to be deemed to refer to death in the lifetime of the testator or not. It is a well established rule of interpretation that where it is provided that if the devisee to whom a fee has been given by the will should die or should die without leaving issue, it is not a limitation upon the estate of the devisee, but is a devise over upon the contingency of death in the testator's lifetime. Mickley's App., 92 Pa. 514; Mitchell v. Ry., 165 Pa. 645, and many other cases. The only difficulty in applying this rule to the present case is the provision that the share given to the son in case of his death, unmarried, is to be rented and the income paid to the other children of the testator, it being suggested that it is unlikely that the testator should direct the renting of property still in his own hands. We see no reason, however, why the testator may not have meant that "if my son dies before I do, unmarried, then at my death the property shall be rented," and the same thing may apply to the provision of his dying and leaving a wife and children. Taking the whole of the will together, we are clearly of opinion that the testator gave the plaintiff a fee in the land in question, or at least gave him full power to sell it in fee. It is therefore ordered, in conformity with the provisions of the case-stated, that judgment be entered for the plaintiff and against the defendant in the sum of $14,000, payable upon delivery by the plaintiff to the defendant of a general warranty deed for the lands described in the case-stated.

June 24, 1921, after hearing, it is therefore ordered in conformity with the provisions of the case-stated, that judgment be entered for the plaintiff and against the defendant in the sum of $14,000 payable upon delivery by

the plaintiff to the defendant of a general warranty deed for the lands described in the case-stated.

*Error assigned,* inter alia, was above judgment, quoting record.

*Wiliam L. Jacob,* for appellant, cited: Allen v. Hirlinger, 33 Pa. Superior Ct. 113; Martin v. Heckman, 25 Pa. Superior Ct. 451; Hunt's Est., 133 Pa. 260; Todd's Est., 33 Pa. Superior Ct. 117; Gross's Est., 10 Pa. 360.

*Harry J. Graham,* for appellee, cited: Jackson's Est., 179 Pa. 77; Morrison v. Truby, 145 Pa. 540; Mitchell v. Ry., 165 Pa. 645; Richards v. Bentz, 212 Pa. 93; Hannon v. Fliedner, 216 Pa. 470; Stark's Est., 264 Pa. 232.

PER CURIAM, January 3, 1922:

The judgment in this case is affirmed on the opinion of the learned President Judge of the court below.

---

# Crumley *v.* Pennsylvania Railroad Co., Appellant.

*Negligence—Railroads—Master and servant—Safety appliance —Defect—Federal Act of March 21, 1893—Coupling cars—Contributory negligence—Case for jury—Verdict—Damages—Excessive verdict.*

1. In an action by a brakeman against his employer for personal injuries, the case is for the jury, where it appears that plaintiff, while engaged in interstate commerce, was injured by the failure of a coupling lever to work, and the evidence tends to show that the coupling pin was bent, and that the conductor in charge of the train, after the accident, experienced difficulty in working the device, and was obliged forcibly to strike the lever a number of times before it would operate.

2. Under the Federal Employer's Liability Act, contributory negligence of plaintiff is no defense, if a defect in a coupler caused or contributed to his injury.